IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRI L. HYATT,                               07-CV-6008-BR

        Plaintiff,                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


**KATHRYN TASSINARI**
**ROBERT BARON**
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
(541) 686-1969

        Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053

1   -  OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2531

           Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Sherri L. Hyatt seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Hyatt's application for Disability Insurance Benefits (DIB) and found Hyatt ineligible for Supplemental Security Income (SSI) payments. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


## <u>ADMINISTRATIVE HISTORY</u>

Hyatt filed applications for SSI and DIB on October 26,

2004. Tr. 374.[1] The applications were denied initially and on reconsideration. Tr. 51-53, 56-60. An Administrative Law Judge (ALJ) held a hearing on January 19, 2006. Hyatt was represented by an attorney. Tr. 399-402. Hyatt and a vocational expert (VE) testified at the hearing. Tr. 399, 403-52. The ALJ issued a decision on June 14, 2006, in which she found Hyatt is not disabled and, therefore, is not entitled to benefits. Tr. 18-27. The Appeals Council denied Hyatt's request for review. Tr. 7-9. The ALJ's decision, therefore, became the final decision of the Commissioner on December 1, 2006.


## BACKGROUND

Hyatt was 45 years old at the time of the hearing before the ALJ. Tr. 403. Hyatt is a high-school graduate. Tr. 403. She has worked as a gas-station manager and as a saw and stacker operator in lumber mills. Tr. 443-44.

In August 2003, Hyatt injured her lower back while moving a concrete bird bath. Tr. 151, 196, 325, 406. Hyatt's resulting lower-back pain improved with treatment over the year following the injury, but she re-aggravated the injury in a rear-impact motor-vehicle accident on March 28, 2005. Tr. 323-25, 330, 415-16. In July 2004, Hyatt quit working and she has not worked

---

[1] Citations to the official transcript of record filed by the Commissioner on February 21, 2007, are referred to as "Tr."

since then other than five months as a babysitter in 2005. Tr. 20, 406-09. Hyatt alleges a disability onset date of July 2, 2004. Tr. 74, 406.

Hyatt has been diagnosed with multi-level degenerative disc disease of the thoracic spine and multiple herniations of the lumbar spine. Tr. 21, 164, 193-96, 199-200, 328, 367. MRIs from September 2003 and November 2005 substantiate these diagnoses. Tr. 164-65, 331-34. As a result, Hyatt suffers from chronic back pain that must be treated with pain medication due to a lack of surgical options to repair or to improve her condition. Tr. 373.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The

Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Hyatt has not engaged in substantial gainful activity since her alleged onset date of July 2, 2004.  Tr. 20.  The ALJ, however, found Hyatt had engaged in unsubstantial work as a babysitter for five months in 2005. Tr. 20.

At Step Two, the ALJ found Hyatt's diffuse degenerative disc disease of the thoracolumbar spine is a severe impairment. Tr. 21.  She also found Hyatt's vertigo and depression are not severe.  Tr. 21.

At Step Three, the ALJ concluded Hyatt's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  Specifically, the ALJ found Hyatt's degenerative disc disease has not caused any nerve-root compromise, and, therefore, she fails to meet Listing 1.04 for spinal disorders.  Tr. 21.  When the ALJ assessed Hyatt's RFC, she found Hyatt is able to lift and to carry 20 pounds occasionally and 10 pounds frequently; to sit, to stand, or to

walk for six hours of an eight-hour work day with the option of sitting or standing at will for pain control; and to kneel and crouch occasionally, but never to climb ladders, ropes, or scaffolds.  Tr. 22.  The ALJ also found Hyatt should avoid all activities involving even moderate exposure to hazards due to the effects of her pain medication.  Tr. 22.

At Step Four, the ALJ found Hyatt cannot return to her past relevant work as a swing-shift supervisor or to her semi-skilled jobs in lumber mills.  Tr. 25.

At Step Five, the ALJ found Hyatt is capable of working in occupations that exist in significant numbers in the local and national economy.  Tr. 25-26.  Accordingly, the ALJ found Hyatt is not disabled and, therefore, is not entitled to benefits. Tr. 26-27.


## DISCUSSION

Hyatt contends the ALJ erred by (1) finding Hyatt's testimony concerning the intensity, duration, and limiting effects of her symptoms is not credible; (2) failing to give appropriate weight to the opinion of Frederick J. Black, M.D., Hyatt's treating physician; and (3) failing to establish at Step Five that Hyatt has the ability to perform work in the national economy.

## I.  Hyatt's Credibility.

Hyatt challenges the ALJ's finding that Hyatt's testimony is not credible regarding her inability to do any work activity. Tr. 23.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  She must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  General assertions that the claimant's testimony is not credible are insufficient.  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

**A.    Hyatt's Testimony.**

At a hearing before the ALJ on January 19, 2006, Hyatt testified she suffers from periods of extreme pain in her lower back causing pain in her legs and numbness in her feet that leave her unable to perform almost any activities.  Tr. 408-11, 417-18, 425, 441.  Hyatt testified her back pain is so severe at times that she has difficulty using the bathroom.  Tr. 413, 425-26. Hyatt further attested to lingering pain caused by even short rides in an automobile.  Tr. 418, 432.

Hyatt stated she lives in a tent in the mountains and performs a daily exercise regimen of walking three times a day, which varies with her level of pain.  Tr. 406-10, 422-23.  Hyatt testified her pain has worsened since an automobile accident in March 2005, and the pain in her back is aggravated by bending over and by moving from a sitting to a standing position. Tr. 416-17, 441.  Hyatt stated she cannot work five days a week on a regular, continuous basis as a result because she would require several days off to recuperate from long periods of sitting or standing.  Tr. 434, 441.

**B.    ALJ's Decision.**

The ALJ determined Hyatt's degenerative disc disease is a severe impairment.  Tr. 21.  An MRI taken on September 15, 2003, revealed multi-level degenerative disc disease in the thoracic spine and multiple herniations in the lumbar spine.  Tr. 199-200.

Gregory Kienzle, M.D., a nonexamining physician who analyzed Hyatt's MRI, found the abnormalities in her spine could result in "painful syndromes and careful clinical assessment with respect to the multiplicity of abnormalities is needed." Tr. 199-200. Accordingly, the Court finds Hyatt has satisfied the first two prongs of the *Cotton* test by providing evidence of impairments that could reasonably cause her some degree of pain. 799 F.2d at 1407. The ALJ did not find Hyatt is malingering, and, therefore, the ALJ must provide clear and convincing reasons for rejecting Hyatt's subjective pain testimony. *Lester*, 81 F.3d at 834.

The ALJ discredits Hyatt's testimony in part on the ground that Hyatt reported to her treating nurse practitioner, Aimee Hansen, F.N.P., on November 17, 2003, that her back was doing "fairly well." Tr. 23, 193. This statement was made over six months before Hyatt's alleged onset date of July 2, 2004. Tr. 71. The ALJ did not explain the significance of Hyatt's statement to Nurse Hansen nor why it discredits Hyatt's subsequent testimony.

Even though the ALJ states there are not any treatment notes regarding Hyatt's medical condition during the period between December 2003 and February 2005, the record contains treatment notes for that period from Tonya L. Hall, L.C.S.W., that indicate Hyatt continued to suffer from chronic back pain. Tr. 23, 168, 182-85. During that time, Hyatt was treated on multiple

occasions by Hall for depression and pain disorder, and Hall addressed Hyatt's chronic back pain repeatedly in her treatment notes. Tr. 181-91. On March 2, 2004, Hyatt also reported her back pain to Sam J. Russo, D.O. Tr. 168. The record reflects Hyatt's symptoms were further aggravated in March 2005 when she was involved in an automobile accident, and an MRI taken on November 9, 2005, again revealed Hyatt's "disease is extensive, involving T11/12 and L2 through S1." Tr. 328, 330-31, 416-17.

The ALJ also discredits Hyatt's testimony on the ground that Todd Hansen, D.C., Hyatt's chiropractor, indicated Hyatt "appears to be making good progress and the overall prognosis is unchanged. It is my opinion that she is progressing slower than expected and that she is approximately 70% improved overall." Tr. 287. The ALJ did not provide any reason for viewing this statement by Dr. Hansen as undermining Hyatt's credibility as to the limitations arising from her lower-back pain. Dr. Hansen's notes reflect he treated Hyatt for injuries resulting from the automobile accident on March 28, 2005, including treatment for Hyatt's neck, right arm, left-side soreness, stiff joints, lower-back pain, and headaches. Tr. 287-311. Dr. Hansen's treatment notes do not indicate Hyatt's degenerative disc disease had improved nor that the symptoms from that impairment had subsided.

The ALJ also discredits Hyatt's testimony on the ground that Kasia Van Pett, M.D., interpreted Hyatt's November 2005 MRI

as indicating Hyatt's condition was unchanged from the prior MRI taken in 2003. Tr. 25. Dr. Van Pett concluded, however, that Hyatt's disease produces characteristic pain and is so extensive and diffuse that it cannot be treated with surgery. Tr. 325-29. Although the ALJ points out that Hyatt does not have any impingement of the spinal cord, she does not explain why this would preclude Hyatt from experiencing her alleged pain symptoms. Tr. 24. As noted, Hyatt provided evidence that degenerative disc disease could cause pain symptoms. In any event, Hyatt need not provide objective evidence of her subjective symptoms as long as she satisfies the *Cotton* test. *See* 799 F.2d at 1407 ("[I]t is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").

The ALJ's final basis for finding Hyatt's testimony not credible is that Hyatt adheres to a daily exercise routine. Tr. 25. Hyatt testified she tries to walk three times a day for half an hour and performs 15 minutes of strengthening exercises. Tr. 405-06. She performs this exercise regimen at the instruction of Rees G. Freeman, M.D., one of her treating physicians. Tr. 155. The Ninth Circuit, however, has held such evidence alone is not a sufficient basis to discredit a claimant's subjective symptom testimony:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on

> certain daily activities, such as grocery
> shopping, driving a car, or limited walking
> for exercise, does not in any way detract
> from her credibility as to her overall
> disability.  One does not need to be utterly
> incapacitated in order to be disabled.  In
> addition [such] activities . . . are not
> necessarily transferable to the work setting
> with regard to the impact of pain.  A patient
> may do these activities *despite* pain for
> therapeutic reasons, but that does not mean
> she could concentrate on work despite the
> pain or could engage in similar activity for
> a longer period given the pain involved.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)(internal

quotations omitted).

Thus, the Court concludes on this record that the ALJ erred

when she failed to provide clear and convincing reasons supported

by substantial evidence in the record for rejecting Hyatt's

testimony regarding her functional limitations arising from her

impairments.

## II.  Medical Testimony.

Hyatt contends the ALJ erred when determining Hyatt's RFC by

assigning "little weight" to the opinion of Dr. Black, one of

Hyatt's treating physicians.  Tr. 24.  Hyatt asserts the ALJ

would have found Hyatt to be disabled if the ALJ had properly

weighed Dr. Black's opinion.

An ALJ may reject an examining or treating physician's

opinion when it is inconsistent with the opinions of other

treating or examining physicians if the ALJ makes "findings

setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ also must give specific, legitimate reasons for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with substantial evidence in the record.  *Magallanes*, 881 F.2d at 751. When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id.*  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**A.   Dr. Black's Opinion.**

Dr. Black's continuing relationship with Hyatt as her treating physician makes him "especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Lester*, 81 F.3d at 833. The ALJ, therefore, must "give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments." *Id*. at 832-33.

Since late 2003, Dr. Black and Nurse Hansen treated Hyatt on numerous occasions for her chronic back pain. Tr. 193-97, 373, 393-98. Based on their extensive treatment and review of clinical records such as MRIs from September 2003 and November 2005, Dr. Black and Nurse Hansen determined Hyatt can perform sedentary work despite her chronic back pain. Tr. 373. In a letter dated January 30, 2006, Dr. Black and Nurse Hansen, however, also opined Hyatt "will probably miss three to four days a month due to back pain and would have difficulty concentrating due to the nature of the pain medication that she is going to need on a long-term basis to control her pain." Tr. 373. Dr. Black and Nurse Hansen concluded: "We believe that sitting two hours at a time will also be problematic in that sitting seems to cause her more pain than any other activity. . . . For these reasons we believe Sherri Hyatt is disabled and unable to

return to work."  Tr. 373.

**B.  ALJ's Decision.**

The ALJ found Hyatt is capable of light-exertion work and
has a sufficient RFC to perform a significant number of jobs that
exist in the local and national economy such as delivery-routing
clerk, ticket cashier, and cashier at a check-cashing agency.
Tr. 25-26.  Although the ALJ noted Dr. Black's assessment that
Hyatt would miss three to four days of work each month, that she
cannot sit for two hours, and that she will be unable to
concentrate due to her pain medication, the ALJ did not consider
these limitations in her assessment of Hyatt's RFC or in her
findings at Step Five.

When assessing Hayes's RFC, the ALJ assigned Dr. Black's
opinion "little weight" on three grounds:  Determination of
Hyatt's disability lies with the ALJ rather than with her
physician; Dr. Black's opinion is contradicted by medical
evidence from Dr. Van Pett, an examining physician; and treatment
notes from Dr. Black after April 15, 2005, are not included in
the record.  Tr. 24.  As noted, the ALJ may reject the opinion of
a treating physician who is contradicted by an examining
physician only if the ALJ articulates specific, legitimate
reasons supported by substantial evidence in the record.
*Barnhart*, 278 F.3d at 957.

As a basis for assigning Dr. Black's opinion little weight,

the ALJ states the determination of a claimant's disability is reserved for the Commissioner.  Tr. 24.  Although determination of a claimant's ultimate disability is the province of the ALJ, she may only reject a treating physician's uncontradicted opinion, however, by providing clear and convincing reasons supported by substantial evidence in the record.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ found Dr. Black's opinion is contradicted by the opinion of Dr. Van Pett and noted the differing terminology used by each in reviewing Hyatt's MRIs.  Tr. 24.  Dr. Black reported Hyatt suffers from "herniations" in the lumbar spine while Dr. Van Pett concluded Hyatt suffers from "bulging discs" and "protrusions" and her degenerative disc disease is "extensive." Tr. 328, 373.  Dr. Van Pett opined Hyatt is not a candidate for surgery to improve her condition and also recommended Hyatt have a morphine pump implanted to help her control the pain.  Tr. 328. The Court, however, does not find any inconsistency between the conclusions of Dr. Van Pett that would undermine Dr. Black's opinion as to the serious nature of Hyatt's functional limitations.  In addition, Dr. Black's finding that Hyatt suffers from disk herniations is supported by the opinion of Dr. Freeman, one of Hyatt's treating physicians who reviewed her MRI from 2003.  Tr. 152-55, 164-65.

Finally, the ALJ notes there are not any medical records

after April 15, 2005, that document Hyatt's medical treatment by Dr. Black. The ALJ, however, does not provide any reason as to why the absence of such medical records undermines Dr. Black's opinion.

Based on this record, the Court concludes the ALJ erred when she failed to provide clear and convincing reasons for rejecting the opinion of Dr. Black. When the ALJ does not provide a legally sufficient basis for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law. *Lester*, 81 F.3d at 834. If the opinion of Dr. Black is credited as true, the record reflects Hyatt is unable to perform work-related activities for as many as four days a month. The VE testified "at two days [missed] a month with a pattern, a person would likely lose their job within 30 to 60 days. Maybe less." Tr. 450. As a result, the Court finds Hyatt does not have a sufficient RFC to sustain work-related activities on a regular and continuing basis as required by SSR 96-8p. Accordingly, this Court concludes Hyatt is disabled and, therefore, is entitled to benefits.

## **REMAND**

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172,

1178 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding Hyatt's impairments. The Court credits Dr. Black's opinion that Hyatt is incapable of performing any work on a regular and continuing basis because her pain will cause her to miss three to four work days each month. Tr. 373. In addition, the VE testified at the hearing that a claimant could not work on a

regular and continuing basis with an impairment that caused her to miss two days of work per month. Tr. 450. Thus, the Court concludes further proceedings would not be useful.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 8th day of November, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge